# **EXHIBIT A**

Proposed Order

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**ARENT FOX LLP**
Robert M. Hirsh, Esq.
Russell P. McRory, Esq. (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY  10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: robert.hirsh@arentfox.com
Email: russell.mcrory@arentfox.com

*Proposed Counsel to the Debtor and
Debtor-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CTE 1 LLC, | Case No. 19-30256-VFP |
| Debtor. | (Honorable Vincent F. Papalia) |

## ORDER APPROVING SALES PROCEDURE
## NOTICE AND BIDDING PROCEDURES

The relief set forth on the following pages, numbered two (2) through and including nineteen (19), is hereby **ORDERED**.

Page:        2
Debtor:      CTE 1 LLC
Case No.:    19-30256 (VFP)
Caption:     Order Approving Sales Procedure Notice and Bidding Procedures

Upon the motion (the "Sale Motion") of CTE 1, LLC d/b/a Lexus of Englewood (the "Debtor"), pursuant to sections 105(a), 363, and 365 of title 11, United States Code (the "Bankruptcy Code") for the entry of: (I) an Order (the "Sale Procedures Order"), scheduling a sale date for the sale of substantially all of the Debtor's tangible and intangible assets (the "Purchased Assets") in one or more lots; approving bidding procedures and protections in connection therewith; approving procedures for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases; and approving the form and manner of notice pursuant to Federal Rule of Bankruptcy Procedure 2002; (II) a second Order (the "Sale Order") approving (A) the sale of the Purchased Assets to the holder or holders of the highest or otherwise best bid for the Purchased Assets, free and clear of any and all liens, claims, encumbrances and other interests (with such liens, claims and encumbrances to attach to the proceeds of such sale); and (B) the assumption and assignment of certain contracts (the "Assumed Contracts"); and where the Debtor has provided good and sufficient notice of the Sale Motion, to the extent it seeks approval of the Sale Procedures Order; and the Court having considered the Sale Motion, the objections interposed (collectively, the "Objections") and oral arguments of counsel with respect to the Sale Motion, as it relates to the entry of the Sale Procedures Order; and sufficient cause appearing therefore for the entry of the Sales Procedures Order,

**IT IS HEREBY ORDERED** that**:**

1.        The Sale Motion, to the extent it seeks to establish Bidding Procedures (as defined below) with respect to a proposed sale of the Purchased Assets, protections for the Stalking Horse Bidder (as defined below), and procedures for the assumption and assignment of the

Assumed Contracts is GRANTED as set forth herein. All of the Objections, to the extent not addressed herein, are overruled.

2.      The Debtor is hereby authorized to solicit bids for the sale of the Purchased Assets and to conduct, in the event qualified bids are received, an auction in accordance with the Bidding Procedures and summarized in the proposed notice (the "Sale Procedures Notice") attached hereto as **Exhibit 1**, reflecting the procedure for selling the Purchased Assets pursuant to, *inter alia*, Section 363(f) of the Bankruptcy Code, for the purpose of entertaining qualified competing bids and selecting the highest or otherwise best offer for the Purchased Assets.

3.      Any person or entity that is interested in purchasing all or a portion of the Purchased Assets (a "Bidder"), must submit a bid to the Debtor ("Bid") in conformity with the (i) Sale Process set forth in Paragraph 1 below, (ii) the Bidding Requirements set forth in Paragraph 2 below, and (iii) the Auction and Sale Process set forth in Paragraph 3 below (collectively, the "Bidding Procedures"). The Bidding Procedures are hereby approved in all respects, and the Debtor is authorized to take any and all actions necessary and appropriate to implement the Bidding Procedures.

1.      Sale Process:

   A.      The Debtor shall market for sale all or substantially all of its assets in appropriate lots and aggregated lots (excluding Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions")) and may include combined lots constituting all or substantially all of the Debtor's assets other than Avoidance Actions.

   B.      The Debtor shall provide appropriate information to interested potential Bidders that enter into a non-disclosure agreement with the Debtor. The Debtor shall endeavor to provide consistent information to potential Bidders through the use of a "data room" or other document depository so

| | |
|---|---|
| Page: | 4 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

that potential Bidders for the same Purchased Assets have access to the same information.

C.     The deadline for submitting bids on the Purchased Assets consistent with the Bidding Requirements set forth in Paragraph 2 below **is January 2, 2020 at 4:00 p.m. Eastern Standard Time** (the "Bid Date"). All bids and the associated bid materials set forth in Paragraph 2 below must be received by Steven Agran, Chief Restructuring Officer of the Debtor (the "CRO"), at 900 Third Avenue, 33rd Floor, New York, NY 10022, Attn: Steven Agran, email: sagran@carlmarks.com by the Bid Deadline.

D.     In the event multiple Qualified Bids (as defined below) for the Purchased Assets are received by the Debtor, the Debtor will conduct an auction for the Purchased Assets on **January 6, 2020 commencing at 12:00 noon Eastern Standard Time** (the "Auction") at the offices of Debtor's counsel, Arent Fox, 1301 Avenue of the Americas, 42nd Floor, New York NY 10019, or such other location designated by the Debtor prior to the scheduled auction (i) in a filing on the docket and (ii) by written notice to the entities entitled to attend the Auction as set forth in Paragraph 3.C(ii) below.

E.     Upon the Debtor's selection of one or more Successful Bids (as defined below) and Back-Up Bids (as defined below) for the Purchased Assets, the Debtor shall seek authorization from this Court to sell the subject assets and assume and assign the subject executory contracts to the Successful Bidder(s) (as defined below) and/or Back-Up Bidder(s) (as defined below) in a sale hearing on **January 9, 2020, at _____ AM/PM Eastern Standard Time** (the "Sale Hearing") in the courtroom of the Honorable Vincent F. Papalia, United States Bankruptcy Judge, District of New Jersey, 50 Walnut Street, Newark, New Jersey.

F.     The Debtor shall use best efforts to close each sale on or before **February 29, 2020**.

2.     Bidding Requirements:

A.     Each bid for all or a portion of the Purchased Assets must be unconditional and not contingent upon any event other than (i) approval by this Bankruptcy Court and (ii) approval by the manufacturer/franchisor Lexus, a Division of Toyota Motor Sales, USA, Inc. (the "Manufacturer") with respect to the Purchased Assets to be acquired. Each bid expressly may not be subject to, including without limitation, any contingencies related to diligence, environmental matters, leases, financing or subsequent approval by any entity, person, shareholder, member, manager or board.

B.      The Debtor and the Manufacturer reserve their rights under the Dealer Sales and Service Agreement ("DSSA"). In particular, the Manufacturer reserves its rights with respect to any proposed assumption of the DSSA, including, without limitation, its rights to consent or not consent to the assumption and assignment of the DSSA or franchise (provided that consent may not be unreasonably withheld or delayed). The Manufacturer has the right to disqualify any bidder prior to the auction but would need to provide acceptable reason for the disqualification.  The Debtor reserves its rights to object or otherwise challenge the Manufacturer's actions or inactions. To facilitate the exercise of such rights, each Bidder seeking to acquire the franchise rights from the Debtor shall provide the (x) CRO at 900 Third Avenue, 33rd Floor, New York, NY 10022, Attn: Steven Agran, email:  sagran@carlmarks.com,  and  (y)  the  Manufacturer,  with  the following items on or before **December 27, 2019**:

(i)      The names of each direct and indirect owner of the proposed Bidder together with whatever other information is reasonably needed by the Manufacturer to conduct a background check of each such owner and written authorization of such owner for the Manufacturer to conduct the background check.  A bid must also fully disclose any connections, relationships (business or otherwise), whether or not known, to the Debtor or agreements or understandings with the Debtor, the Stalking Horse Bidder or any other known bidders, Potential Bidder or Qualified Bidder, and/or any officer, manager, or member of the Debtor; and

(ii)      The CSI Reports for the current year to date and the two preceding calendar years, which include comparator scores (i.e., nation, district and/or region) provided by the relevant vehicle manufacturers for whose vehicles Bidder is a dealer. The CSI Reports must be submitted for all franchises owned (in whole or in part) or operated by the proposed Bidder, and/or any direct owner of the proposed Bidder and/or any indirect owner of the proposed Bidder. However, for any proposed Bidder or owner thereof that is an existing dealer for the Manufacturer, such owner does not have to supply CSI Reports to the Manufacturer.

C.      Bids must be received by the Debtor no later than the Bid Date and contain the following:

(i)      Current audited financial statements of (a) the Bidder, or (b) if the Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements of the equity holders of the Bidder who shall either guarantee the obligations of the Bidder or provide such other form of financial

disclosure acceptable to the Debtor in the exercise of its reasonable business judgment.

(ii)    Written evidence of the Bidder's (a) financial capacity to close the contemplated transaction, and (b) provide adequate assurance of future performance under any executory contracts or unexpired leases to be assumed and/or assigned pursuant to the proposed transaction.

(iii)   A completed franchise application for the Manufacturer. Each Bidder shall concurrently provide such application to the Manufacturer.

(iv)    A statement that the Bidder offers to purchase, in cash, some or all of the Purchased Assets upon terms and conditions that the Debtor reasonably determines are at least as favorable to the Debtor as those terms and conditions set forth in the Stalking Horse Agreement (or pursuant to an alternative structure that the Debtor reasonably determines is no less favorable to the Debtor than the terms and conditions of the Stalking Horse Agreement). For the avoidance of doubt, any Qualified Bid must, either on its own or when considered together with other Qualified Bid(s), provide value in excess of the Stalking Horse Agreement plus the Expense Reimbursement and minimum overbid requirements detailed below in Section (ix).

(v)     A commitment to close the transactions within the timeframe contemplated by the Stalking Horse Agreement.

(vi)    A binding and enforceable signed writing that the Bidder's offer is irrevocable unless and until the Debtor accepts a higher or otherwise better bid and such Bidder is not selected as a Back-Up Bidder; provided that if such Bidder is selected as the Successful Bidder, its offer shall remain irrevocable until four (4) months after the execution of the applicable Proposed Asset Purchase Agreement. Such writing shall guarantee performance of the Bidder by its parent entities, if any, or provide such other guarantee of performance requested by and acceptable to the Debtor.

(vii)   A duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement (collectively, the

"Proposed Asset Purchase Agreement"); provided, however, that such Proposed Asset Purchase Agreement shall not include any financing or diligence conditions, or any other conditions that are less favorable to the Debtor than the conditions in the Stalking Horse Agreement). The Automobile Asset list must include a formula for valuing prior year models, Demo and Loaner Units, as well as, parts (both Lexus and non-manufacturer) value.  Each Proposed Asset Purchase Agreement shall be required to provide for the assumption and assignment of the DSSA.

(viii)    A cash deposit equal to five percent (5%) of the cash consideration of such Bidder's bid (the "Deposit"), not to exceed $1,250,000, in the form of a wire transfer to the Debtor or a cashier's check payable to the Debtor and to be held in an escrow account at Arent Fox, LLP pending completion of the Sale unless, as set forth herein, the Bidder is determined to be  the Prevailing Bidder or a Back-Up Bidder (each as hereafter defined).

(ix)    A cash purchase price that exceeds the aggregate cash consideration to be paid to or for the benefit of the Debtor's estate set forth in the Stalking Horse Agreement by at least $500,000.00, which represents the sum of: (i) the Expense Reimbursement of $250,000.00, plus (ii) an overbid of $250,000.00, and otherwise has a value to the Debtor, in the exercise of its reasonable business judgment, subject to consultation with the DIP Lender, Toyota Motor Credit Corporation (the "DIP Lender") and with the Official Committee of Unsecured Creditors (the "Committee"), that is greater or otherwise better than the value offered under the Stalking Horse Agreement (including taking into account the impact of any liabilities assumed in the Stalking Horse Agreement).

(x)    Identification with particularity of which executory contracts and unexpired leases the Bidder wishes to assume and provides details of the Bidder's proposal for the treatment of related Cure Costs (as defined in the Sale Procedures Order), and contains sufficient information concerning the Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned.

(xi)    An express acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding acquiring the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the

| Page: | 8 |
|---|---|
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Proposed Asset Purchase Agreement; and (iv) is not entitled to any expense reimbursement, break-up fee, termination fee, or similar type of payment in connection with its bid.

(xii) An irrevocable undertaking by the Bidder to execute and deliver to the Debtor such other guarantee of performance or assurance acceptable to the Debtor in its discretion.

(xiii) A statement that the Bidder consents to the jurisdiction of the Bankruptcy Court, as applicable.

(xiv) Written confirmation that the Bidder has not engaged in any collusion with respect to the bidding or the sale process.

D. Only bids meeting the above requirements as determined by the Debtor will be considered and, of those, only those which the CRO believes, in the exercise of his reasonable business judgment, subject to consultation with the DIP Lender and with the Committee, would be consummated if selected as the Successful Bid, shall be considered "Qualified Bids." Each Bidder that is determined to have submitted a Qualified Bid will be considered a "Qualified Bidder."

3. Auction and Sale Process:

A. Irrevocable Offer and Jurisdiction. Each Qualified Bid submitted shall constitute an irrevocable offer and be binding on the applicable Qualified Bidder from the time the bid is submitted until the entry of the Sale Order (as defined below). All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of any documents governing, effectuating, or relating to the contemplated sale transaction(s).

B. Auction Time and Location. As set forth in Paragraph 1.D. above, in the event the Debtor receive one or more Qualified Bids for the same Purchased Assets, the Debtor shall hold an Auction.

C. Auction Procedures. The Auction shall be conducted in accordance with the following procedures:

| | |
|---|---|
| Page: | 9 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

(i)    Prior to the commencement of the Auction, the Debtor shall provide notice to each Qualified Bidder of the Qualified Bid that the Debtor believes, in the exercise of its reasonable business judgment in consultation with the DIP Lender and with the Committee, is the highest or otherwise best offer for the applicable Purchased Assets (the "Starting Bid").  The Debtor will value each bid based on the Proposed Asset Purchase Agreements and will determine bid order based upon the value of the bids.

(ii)    Only the Debtor, the DIP Lender, representatives of the Creditors Committee, representatives of the Manufacturer, and each Qualified Bidder, and each of their respective advisors and representatives, may attend the Auction in person, and only Qualified Bidders physically present at the Auction will be entitled to make any Subsequent Bids (as defined below) at the Auction.

(iii)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale of the Purchased Assets with any other Qualified Bidder, potential Bidder, the Manufacturer, or any other person or entity and shall be required to reaffirm that it has not engaged in any such collusion with each Subsequent Bid that it makes.

(iv)    All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(v)    The CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules (1) are not inconsistent with this Order, the Bankruptcy Code, or any other order of this Court, and (2) are disclosed to each Qualified Bidder at the Auction.

(vi)    Bidding at the Auction for each lot or relevant combinations of lots will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid by a Qualified Bidder (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (b) is determined by the CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee, to be (1) for the first round, a higher or otherwise better offer than the Starting Bid, and (2) for subsequent rounds, a higher or otherwise better offer than the then Leading Bid (as defined below).

| | |
|---|---|
| Page: | 10 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

(vii)   Each Subsequent Bid at the Auction shall provide net value to the estate of at least $250,000 over the Starting Bid or the Leading Bid, as applicable, which net value may be in the form of cash or non-cash consideration (with any such non-cash consideration to be valued by the CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee and articulated on the record of the Auction). The CRO, on behalf of the Debtor, may set lower incremental bids as he determines, in the exercise of his reasonable business judgment, by notifying each Qualified Bidder for such lot or combination of lots of such reduced bid increment.

(viii)   A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(ix)   After each round of bidding, the CRO, on behalf of the Debtor, shall announce the bid that he believes in the exercise of his reasonable business judgment, subject to consultation with the DIP Lender and with the Committee, to be the highest or otherwise best offer (the "Leading Bid").

(x)   All Qualified Bidders for a particular lot will be entitled to be present for all Subsequent Bids for such lot at the Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(xi)   The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments of the Auction to, among other things: (1) facilitate discussions between the Debtor and Qualified Bidders; (2) allow individual Qualified Bidders to determine how they wish to proceed; (3) consider and determine the current highest or otherwise best Subsequent Bid at any given time during the Auction; and (4) give Qualified Bidders the opportunity to provide the Debtor and the DIP Lender with such additional evidence as the Debtor request that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

D.   Valuation of Bids. Qualified Bids (including Subsequent Bids) will be valued by the CRO, on behalf of the Debtor, based upon factors such as: (i) the terms, economic or otherwise, of the transaction documents submitted as part of a Qualified Bid; (ii) the total expected value of the Qualified Bid to the Debtor's estate; (iii) whether the Qualified Bid is for

some or all of the Debtor's assets and the value of any assets not contemplated to be acquired as part of such Qualified Bid; (iv) the impact of any rejection damages claims arising from the proposed rejection of contracts or unexpired leases under the Qualified Bid; (v) the extent to which the identity of the Qualified Bidder or any modifications to the form of the Stalking Horse Agreement by such Qualified Bidder are likely to affect the timing of execution of definitive transaction documents or affect the timing of the closing of a transaction, and the cost or benefit to the Debtor of such modifications or timing considerations; (vi) any conditions to the Qualified Bidder's obligations to close a transaction, including the likelihood that the  Manufacturer will consent to the Qualified Bidder becoming a franchisee of the Manufacturer, and the timing thereof (including the time required to obtain any necessary approvals); the ability to obtain all necessary antitrust, governmental, foreign investment or other regulatory approvals for the proposed transaction; and any other factors the CRO may deem relevant, on behalf of the Debtor, in his reasonable business judgment and in consultation with the DIP Lender and the Committee.

E.    Successful Bid. Immediately upon the conclusion of the Auction, the CRO, on behalf of the Debtor, in consultation with the DIP Lender and the Committee, shall (i) determine, consistent with this Order, which bid or bids collectively constitute the highest or otherwise best bid for the Purchased Assets in one or more lots (such bid or bids collectively the "Successful Bid" and the Bidder or Bidders collectively submitting the Successful Bid, the "Successful Bidder") and (ii) communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The Debtor shall be deemed to have accepted a Qualified Bid only when
(i) either (1) such bid is declared the Successful Bid at the end of the Auction or (2) such bid is declared a Back-Up Bid (as defined below) and the Debtor elect to consummate the sale transaction(s) contemplated by such Back-Up Bid with the Back-Up Bidder pursuant to the terms hereof;
(ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving the sale transaction(s) contemplated thereby.  The Successful Bidder must increase its deposit to ten percent (10%) of the cash consideration of its bid no later than three days after the Sale Hearing.

F.    Back-Up Bid.

(i)    Immediately following the selection of the Successful Bid, the CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee, shall (i) determine which bid or bids collectively constitute the second highest or otherwise best bid and, if

Page:       12
Debtor:     CTE 1 LLC
Case No.:   19-30256 (VFP)
Caption:    Order Approving Sales Procedure Notice and Bidding Procedures

applicable, third highest or otherwise best bid and may, in his discretion and in consultation with the DIP Lender and with the Committee, deem such second and third highest or otherwise best bid or bids each a back-up bid (such bid or bids shall each be a "Back-Up Bid" and each Bidder submitting a Back-Up Bid, a "Back-Up Bidder") and (ii) communicate to the Qualified Bidders the identity of each Back-Up Bidder and the details of each Back-Up Bid.

(ii)   Each Back-Up Bid shall remain open and shall be irrevocable and binding on the Back-Up Bidder until the earlier of (i) the first business day following the consummation of the sale of the Purchased Assets that are the subject of such Back-Up Bid to the Successful Bidder or a higher or better Back-Up Bidder, and (ii) 11:59 p.m. Eastern time on the day ninety (90) days after the date the Sale Order is entered by the Court. If the Successful Bid, or the next highest or otherwise best Back-Up Bid is terminated or fails to close within the time period specified in the Successful Bid or such Back-Up Bid, the CRO, on behalf of the Debtor, shall, in consultation with the DIP Lender and with the Committee, be authorized to consummate the sale transaction(s) contemplated by the next highest or otherwise best Back-Up Bid with such Back-Up Bidder without further order of the Court.

(iii)  The Back-Up Bidder must increase its deposit to ten percent (10%) of the cash consideration of its bid no later than three days after the Sale Hearing.

G.   As Is Where Is. Any sale of Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or its estates, except to the extent expressly set forth in the purchase agreement corresponding to the Successful Bid or applicable Back-Up Bid, as the case may be. Each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding the Purchased Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in their asset purchase agreement.

H.   Free and Clear. Except as otherwise provided in the terms of the asset purchase agreement for Successful Bid or such Back-Up Bid which may

| | |
|---|---|
| Page: | 13 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

ultimately be consummated, all of the Debtor's right, title and interest in and to the Purchased Assets subject to such sale shall be sold free and clear of all liens, claims (as such term is defined in section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, and all rights to object or consent to the effectiveness of the transfer of the Purchased Assets, all as more specifically set forth in the Sale Motion and the proposed order approving the sale transaction(s) (the "Claims"), and as set forth in the Sale Order, such Claims to attach to the proceeds of the sale with the same validity and priority as such Claims applied against the applicable Purchased Assets.

I.  Return of Deposit. The deposit submitted by each Qualified Bidder shall be returned promptly following the Sale Hearing unless such Qualified Bidder is selected as a Successful Bidder or a Back-Up Bidder. A deposit submitted by a Back-Up Bidder will be held by the Debtor until forty-eight (48) hours after the Back-Up Bid has been terminated in accordance with this Order and the Asset Purchase Agreement entered into with such Back-Up Bidder. If a Successful Bidder or a Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder or Back-Up Bidder, as applicable, the Debtor shall be entitled to retain the deposit (and such deposit shall constitute Cash Collateral of the DIP Lender) in partial satisfaction of any damages resulting from the breach or failure to perform by such Successful Bidder or Back-Up Bidder, without prejudice to any other rights the Debtor may have. The Debtor shall credit the Deposit of the Successful Bidder or the Back-Up Bidder, as applicable, toward the purchase price for their transaction on the closing of the sale to them of the Assets they are acquiring.

J.  Reservation of Rights. Except as otherwise provided in this Order, the Debtor reserves the right, in the exercise of the CRO's reasonable business judgment on behalf of the Debtor's estate, in consultation with the DIP Lender and with the Committee, to: (i) determine which Bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iv) designate the second and third highest or otherwise best bids as Back-Up Bids; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of this Order or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (vi) waive terms and conditions set forth herein with respect to all Qualified Bids;

Page:       14
Debtor:     CTE 1 LLC
Case No.:   19-30256 (VFP)
Caption:    Order Approving Sales Procedure Notice and Bidding Procedures

(vii) impose additional terms and conditions with respect to all Qualified Bids; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) seek to modify the Bidding Procedures or withdraw the Bidding Procedures Motion at any time with or without prejudice.

4.      The Sale Procedures Notice, which reflects the Bidding Procedures set forth above, is approved in all respects.

5.      The Debtor's entry into the Stalking Horse Agreement (attached as <u>Exhibit B</u> to the Sale Motion) is authorized and approved, subject to higher and better offers at the Auction regarding the Purchased Assets in accordance with the Bidding Procedures.

6.      The Debtor is authorized to perform all obligations of the Debtor set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and prior to the entry of the Sale Order, subject to the terms of the Bidding Procedures.

7.      The Bid Protections for the Stalking Horse Bidder are approved in their entirety. The Debtor is authorized to pay any amounts that may become due to the Stalking Horse Bidder on account of the Bid Protections on the terms set forth in the Stalking Horse Agreement. The Stalking Horse Bidder shall be granted an allowed administrative expense claim under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code in an amount equal to the Expense Reimbursement to the extent it becomes due in accordance with the terms of the Stalking Horse Agreement, which (if triggered) shall be payable from the proceeds of the Sale of the Purchased Assets at the closing of such Sale, in accordance with the terms of the Stalking Horse Agreement, without further order of or proceedings before this Court. Nothing in this Order shall be construed as authorizing and directing the payment of any Bid Protections to the Stalking

| Page: | 15 |
|---|---|
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

Horse Bidder in the event the Stalking Horse Bidder becomes the Successful Bidder with respect

to the Purchased Assets.

8.    The Notice of Assumption and Assignment of Executory Contracts and

Unexpired Leases in Connection with Proposed Sale of Certain Assets of the Debtor, in the

form substantially similar to that attached to the Motion as Exhibit C (the "Cure Notice"), is

approved.  In particular:

A.    Cure Notice: The Debtor shall, within five (5) business days of the entry of this Order, serve the Cure Notice upon each non-Debtor counterparty to each Executory Contract or Unexpired Lease to which the Debtor is a party that may be assumed and assigned to the Stalking Horse Bidder, regardless of whether, at that time, the Executory Contract or Unexpired Lease is listed as being proposed to be assumed and assigned to the Stalking Horse Bidder. The Cure Notice shall state the date, time and place of the Sale Hearing and the date by which any objection to the assumption and assignment of such Executory Contract or Unexpired Lease must be filed and served. The Cure Notice shall also identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Executory Contract or Unexpired Lease to cure any defaults that exist under such contract or lease (such amounts, the "Cure Costs") pursuant to section 365 of the Bankruptcy Code. The Cure Notice does not constitute an admission that an Executory Contract or Unexpired Lease is in fact an executory contract or unexpired lease for the purposes of section 365 of the Bankruptcy Code, and the Debtor reserves any and all rights with respect to the Executory Contracts and Unexpired Leases. The inclusion of an Executory Contract or Unexpired Lease on the Cure Notice shall not obligate the Successful Bidder to take assignment of such Executory Contract or Unexpired Lease. Only those contracts that constitute (a) Buyer Assumed Agreements pursuant to the Stalking Horse Agreement or (b) if the Successful Bidder is not the Stalking Horse Bidder, Buyer Assumed Agreements identified in the Successful Bidder's Proposed Asset Purchase Agreement, shall be assumed, assigned and sold to such Successful Bidder.

B.    Cure Costs Objections: If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to any proposed Cure Costs set forth in the Cure Notice or any Supplemental Cure Notice, such counterparty must (a) file with the Court a written objection (a "Cure  Costs Objection") and (b) serve such Cure Costs Objection, so as to be received no later than ten (10) days after service of the Cure Notice or Supplemental Cure Notice, as applicable (the "Cure Objection Deadline"), on: (i) counsel to the Debtor; (ii) counsel to the Stalking Horse Bidder; (iii) the Office of The United States Trustee; and (iv) counsel to

| Page: | 16 |
|---|---|
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

the Official Committee of Unsecured Creditors (collectively, the "Notice Parties").

If, at any time and from time to time after the entry of the Sale Procedures Order, the Debtor or the Stalking Horse Bidder or other Successful Bidder identify additional Executory Contracts or Unexpired Leases to be assumed and assigned as Buyer Assumed Agreements in accordance with the terms of the Stalking Horse Agreement or Successful Bidder's Proposed Asset Purchase Agreement, the Debtor shall serve a supplemental Cure Notice (the "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) no later than ten (10) days before the closing ("Closing") of the Sale, or, if such Executory Contract or Unexpired Lease is identified less than ten (10) days prior to the Closing, by the date set forth on the Supplemental Cure Notice. Each Supplemental Cure Notice shall: (a) state the date, time and place of the Sale Hearing (or later hearing, if applicable); (b) state the date by which any objection to the assumption and assignment of such Buyer Assumed Agreement must be filed and served; and (c) identify the proposed Cure Costs, if any.

Each Cure Costs Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the Cure Costs, if any, specified by the Debtor in the Cure Notice or Supplemental Cure Notice, as applicable.

C.    Disputed Cure Costs: In the event that the Debtor and the non-debtor party cannot resolve a Cure Costs Objection, disputed Cure Costs shall not be paid until the resolution of any such disputes by the Court or mutual agreement of the Debtor, with the consent of the Stalking Horse Bidder to the extent required in the Stalking Horse Agreement, and the objecting party. Cure Costs Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

D.    Deemed Consent to Cure Costs: Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Costs Objection shall be forever barred from asserting that Cure Costs are owed in an amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice. If no Cure Costs Objection is timely filed and served by the Cure Objection Deadline with respect to a Buyer Assumed Agreement, the Cure Costs identified in the Cure Notice or Supplemental Cure Notice, as applicable, with respect to the Executory Contracts and Unexpired Leases shall be the only amounts necessary to be paid to cure all monetary defaults pursuant to section 365(b) of the Bankruptcy Code under such Buyer Assumed Agreement, to the extent the Stalking Horse Bidder (or other Successful Bidder) ultimately decides to have the applicable Buyer Assumed Agreement assumed and assigned to it. Any party failing to timely file a Cure

| | |
|---|---|
| Page: | 17 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

Costs Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate or the Successful Bidder, notwithstanding anything to the contrary in any Executory Contract or Unexpired Lease, or any other document. To the extent a Cure Costs Objection is resolved or determined unfavorably to the Debtor, the Debtor may, with the prior written consent of the Successful Bidder, seek to instead reject the applicable Executory Contract or Unexpired Lease after such determination.

E.  Assignment Objections: If any counterparty to an Executory Contract or Unexpired Lease objects to the assumption and assignment of such Executory Contract or Unexpired Lease for any reason (including with respect to adequate assurance of future performance) other than the amount of the proposed Cure Costs (an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Notice Parties by no later than ten (10) days after service of the Cure Notice or Supplemental Cure Notice, as applicable (the "Assignment Objection Deadline"). The Court shall make any and all determinations concerning an Assignment Objection, including adequate assurance of future performance under the Buyer Assumed Agreements pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code, at the Sale Hearing (or such later hearing as may be requested by the Debtor).  If no Assignment Objection is timely filed and served by the Assignment Objection Deadline, the counterparty to an Executory Contract or Unexpired Lease shall be deemed to have consented to the assumption, assignment and sale of the Executory Contract or Unexpired Lease to the Successful Bidder if such Executory Contract or Unexpired Lease is elected by the Successful Bidder as a Buyer Assumed Agreement and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale; provided, however, in the event that the Successful Bidder is not the Stalking Horse Bidder, the non-debtor parties to the Executory Contracts and Unexpired Leases to be assumed and assigned to such Successful Bidder shall have until 4:00 p.m. on the date that is one (1) business day prior to the Sale Hearing to object to the assumption, assignment and/or sale of their Executory Contracts and Unexpired Leases to such Successful Bidder; provided further, however, any such objection may relate solely to adequate assurance of future performance by such Successful Bidder pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code.

F.  Addition or Removal of Certain Buyer Assumed Agreements: The Stalking Horse Bidder may add or remove any Assumed Contract to be assumed by the Debtor and assigned to the Stalking Horse Bidder at any time prior to five (5) days prior to the Sale Hearing in accordance with the terms of the Stalking Horse Agreement.

Page:        18
Debtor:      CTE 1 LLC
Case No.:    19-30256 (VFP)
Caption:     Order Approving Sales Procedure Notice and Bidding Procedures

9.      The Court shall conduct the Sale Hearing on **January 9, 2020 at _____ a.m. /**

**p.m.** to consider confirming the results of the Auction and approving the Debtor's sale of the

Assets to the Successful Bidder(s), pursuant to Section 363(f) of the Bankruptcy Code

10.     Objections if any to the Sale Motion, as it relates to the Sale Hearing or the

proposed Sale, shall be in writing, shall state with particularity the basis of the objection and

shall be served upon counsel for the Debtor, counsel for the Creditors Committee, counsel for

DIP Lender, the Office of the US Trustee, and any party that has filed a Notice of Appearance in

these bankruptcy cases, on or before_____ **at 5:00 p.m. Eastern Standard**

**Time**. Oral objections to the Auction or the Prevailing Bid(s) may be interposed at the Sale

Hearing.

11.     Counsel for the Debtor shall serve a copy of this Order and the Sale Procedures

Notice, on or before **December 18, 2019** by (A) electronic mail (which requirement is satisfied

by entry of this Order, via ECF) or overnight mail, upon: (i) the Office of the United States

Trustee; (ii) counsel to the DIP Lender; (iii) counsel to the Committee; (iv) counsel to all parties

to the proposed Assumed Contracts (as that term is defined in the Sale Motion); (v) all applicable

taxing and regulatory authorities; and (vi) all parties that have filed a Notice of Appearance in

these bankruptcy cases; and (B) by first class mail, upon each Debtor's known creditors. Notice

of the Sale Motion and Sale Hearing in this manner shall constitute good and sufficient notice

under the circumstances.

12.     The Court shall retain jurisdiction to: (i) interpret, implement and enforce the

terms of this Order; (ii) enter Orders in aid and furtherance of this Order; and (iii) adjudicate any

| | |
|---|---|
| Page: | 19 |
| Debtor: | CTE 1 LLC |
| Case No.: | 19-30256 (VFP) |
| Caption: | Order Approving Sales Procedure Notice and Bidding Procedures |

and all remaining issues concerning the Debtor's right and authority to sell the Purchased Assets,

including to approve the sale of the Purchased Assets at the Sale Hearing.

## Exhibit 1

**Sale Procedures Notice**

**ARENT FOX LLP**
Robert M. Hirsh, Esq.
Russell P. McRory, Esq. (admitted *pro hac vice*)
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
(212) 484-3900 (Telephone)
(212) 484-3990 (Facsimile)
robert.hirsh@arentfox.com
russell.mcrory@arentfox.com

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CTE 1 LLC, | Case No. 19-30256 (VFP) |
| Debtor. | |

**NOTICE OF BID DEADLINE, AUCTION DATE, AND SALE HEARING FOR THE**
**APPROVAL OF THE SALE OF CERTAIN ASSETS OF THE**
**DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

CTE 1 LLC, the debtor and debtor-in-possession (the "Debtor" or the "Company") is seeking to sell or assign substantially all of its tangible and intangible assets (the "Purchased Assets").

On December __, 2019, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order (the "Sale Procedures Order") approving certain bidding and auction procedures and related schedules and deadlines ("Bidding Procedures") for the sale of the Purchased Assets.

All parties interested in purchasing all or a portion of the Purchased Assets ("Bidder") are invited to submit a bid to the Debtor ("Bid") in accordance with the terms of the Sale Procedures Order and the Bidding Procedures. Only Bidders who qualify and who have submitted qualifying Bids shall be eligible to participate in the Auction. **All interested potential bidders should carefully read the Bidding Procedures, a copy of which is attached hereto as Exhibit A.**

Copies of the Stalking Horse Agreement, the Sale Procedures Order, and the Bidding Procedures, are available upon request from Steven Agran, Chief Restructuring Officer of the Debtor, at 917-865-4716 or SAGRAN@CARLMARKS.COM. Copies of these documents may also be obtained by contacting the Debtor's counsel.

**ANY INTERESTED BIDDER SHOULD CONTACT STEVEN AGRAN, CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, at 917-865-4716 or SAGRAN@CARLMARKS.COM.**

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The deadline to submit certain information regarding the ownership of the proposed Bidder and CSI Reports to the Debtor and to the Manufacturer (as defined in the Bidding Procedures) is **December 27, 2019 (EST)**.

- The **deadline to submit a bid** for all or a portion of the Purchased Assets is **January 2, 2020 at 4:00 p.m. (EST).**

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Purchased Assets (the "Sale Objection Deadline") is _____. Objections must be filed and served in accordance with the Sale Procedures Order.

- Auctions for the Purchased Assets have been scheduled for **January 6, 2020 at 12:00 noon (EST).**

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on **January 9, 2020, at _____AM/PM (EST).**

- The sale of the Purchased Assets is anticipated to close on or before **February 29, 2020**.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE SALE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTOR'S CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENTS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

Dated:  December __, 2019                    **ARENT FOX LLP**

_____
Robert M. Hirsh, Esq.
Russell P. McRory, Esq. (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: robert.hirsh@arentfox.com
Email: russell.mcrory@arentfox.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

2

## **Exhibit A**

**Bidding Procedures**

**BIDDING PROCEDURES**

These bidding procedures set forth the terms by which CTE 1, LLC d/b/a Lexus of Englewood (the "Debtor") may effectuate a sale (the "Sale") of substantially all of tangible and intangible assets (as defined in the Stalking Horse Agreement (defined below), the "Purchased Assets") subject to the terms and conditions and in accordance with the process and procedures set forth herein. These bidding procedures were approved by an order (the "Sale Procedures Order") entered on December __ , 2019, by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") in the chapter 11 case bearing the caption *In re CTE 1, LLC et al.*, Case No. 19-30256-VFP.

Any person or entity that is interested in purchasing all or a portion of the Purchased Assets (a "Bidder"), must submit a bid to the Debtor ("Bid") in conformity with the (i) Sale Process set forth in Paragraph 2 below, (ii) the Bidding Requirements set forth in Paragraph 3 below, and (iii) the Auction and Sale Process set forth in Paragraph 4 below (collectively, the "Bidding Procedures").

    1.    Summary of Deadlines

- The deadline to submit certain information regarding the ownership of the proposed Bidder and CSI Reports to the Debtor and to the Manufacturer (as defined below) is **December 27, 2019 (EST)**.

- The **deadline to submit a bid** for all or a portion of the Purchased Assets is **January 2, 2020 at 4:00 p.m. (EST).**

- Auctions for the Purchased Assets have been scheduled for **January 6, 2020 at 12:00 noon (EST).**

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on **January 9, 2020, at _____ AM/PM (EST).**

- The sale of the Purchased Assets is anticipated to close on or before **February 29, 2020**.

    2.    Sale Process:

        A.    The Debtor shall market for sale all or substantially all of its assets in appropriate lots and aggregated lots (excluding Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions")) and may include combined lots constituting all or substantially all of the Debtor's assets other than Avoidance Actions.

B.     The Debtor shall provide appropriate information to interested potential Bidders that enter into a non-disclosure agreement with the Debtor. The Debtor shall endeavor to provide consistent information to potential Bidders through the use of a "data room" or other document depository so that potential Bidders for the same Purchased Assets have access to the same information.

C.     The deadline for submitting bids on the Purchased Assets consistent with the Bidding Requirements set forth in Paragraph 3 below **is January 2, 2020 at 4:00 p.m. Eastern Standard Time** (the "Bid Date"). All bids and the associated bid materials set forth in Paragraph 3 below must be received by Steven Agran, Chief Restructuring Officer of the Debtor (the "CRO"), at 900 Third Avenue, 33rd Floor, New York, NY 10022, Attn: Steven Agran, email: sagran@carlmarks.com by the Bid  Deadline.

D.     In the event multiple Qualified Bids (as defined below) for the Purchased Assets are received by the Debtor, the Debtor will conduct an auction for the Purchased Assets on **January 6, 2020 commencing at 12:00 noon Eastern Standard Time** (the "Auction") at the offices of Debtor's counsel, Arent Fox, 1301 Avenue of the Americas, 42nd Floor, New York NY 10019, or such other location designated by the Debtor prior to the scheduled auction (i) in a filing on the docket and (ii) by written notice to the entities entitled to attend the Auction as set forth in Paragraph 4.C(ii) below.

E.     Upon the Debtor's selection of one or more Successful Bids (as defined below) and Back-Up Bids (as defined below) for the Purchased Assets, the Debtor shall seek authorization from this Court to sell the subject assets and assume and assign the subject executory contracts to the Successful Bidder(s) (as defined below) and/or Back-Up Bidder(s) (as defined below) in a sale hearing on **January 9, 2020, at _____ AM/PM Eastern Standard Time** (the "Sale Hearing") in the courtroom of the Honorable Vincent F. Papalia, United States Bankruptcy Judge, District of New Jersey, 50 Walnut Street, Newark, New Jersey.

F.     The Debtor shall use best efforts to close each sale on or before **February 29, 2020**.

3.     Bidding Requirements:

A.     Each bid for all or a portion of the Purchased Assets must be unconditional and not contingent upon any event other than (i) approval by this Bankruptcy Court and (ii) approval by the manufacturer/franchisor Lexus, a Division of Toyota Motor Sales, USA, Inc. (the "Manufacturer") with respect to the Purchased Assets to be acquired.  Each bid expressly may not be subject to, including without limitation, any contingencies related to diligence, environmental matters, leases, financing or

2

subsequent approval by any entity, person, shareholder, member, manager or board.

B.      The Debtor and the Manufacturer reserve their rights under the Dealer Sales and Service Agreement ("DSSA"). In particular, the Manufacturer reserves its rights with respect to any proposed assumption of the DSSA, including, without limitation, its rights to consent or not consent to the assumption and assignment of the DSSA or franchise (provided that consent may not be unreasonably withheld or delayed). The Manufacturer has the right to disqualify any bidder prior to the auction but would need to provide acceptable reason for the disqualification.  The Debtor reserves its rights to object or otherwise challenge the Manufacturer's actions or inactions. To facilitate the exercise of such rights, each Bidder seeking to acquire the franchise rights from the Debtor shall provide the (x) CRO at 900 Third Avenue, 33rd Floor, New York, NY 10022, Attn: Steven Agran, email: sagran@carlmarks.com, and (y) the Manufacturer, with the following items on or before **December 27, 2019**:

(i)     The names of each direct and indirect owner of the proposed Bidder together with whatever other information is reasonably needed by the Manufacturer to conduct a background check of each such owner and written authorization of such owner for the Manufacturer to conduct the background check.  A bid must also fully disclose any connections, relationships (business or otherwise), whether or not known, to the Debtor or agreements or understandings with the Debtor, the Stalking Horse Bidder or any other known bidders, Potential Bidder or Qualified Bidder, and/or any officer, manager, or member of the Debtor; and

(ii)    The CSI Reports for the current year to date and the two preceding calendar years, which include comparator scores (i.e., nation, district and/or region) provided by the relevant vehicle manufacturers for whose vehicles Bidder is a dealer. The CSI Reports must be submitted for all franchises owned (in whole or in part) or operated by the proposed Bidder, and/or any direct owner of the proposed Bidder and/or any indirect owner of the proposed Bidder. However, for any proposed Bidder or owner thereof that is an existing dealer for the Manufacturer, such owner does not have to supply CSI Reports to the Manufacturer.

C.      Bids must be received by the Debtor no later than the Bid Date and contain the following:

(i)     Current audited financial statements of (a) the Bidder, or (b) if the Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements of the equity holders of the Bidder who shall either guarantee the

3

obligations of the Bidder or provide such other form of financial disclosure acceptable to the Debtor in the exercise of its reasonable business judgment.

(ii)    Written evidence of the Bidder's (a) financial capacity to close the contemplated transaction, and (b) provide adequate assurance of future performance under any executory contracts or unexpired leases to be assumed and/or assigned pursuant to the proposed transaction.

(iii)    A completed franchise application for the Manufacturer. Each Bidder shall concurrently provide such application to the Manufacturer.

(iv)    A statement that the Bidder offers to purchase, in cash, some or all of the Purchased Assets upon terms and conditions that the Debtor reasonably determines are at least as favorable to the Debtor as those terms and conditions set forth in the Stalking Horse Agreement (or pursuant to an alternative structure that the Debtor reasonably determines is no less favorable to the Debtor than the terms and conditions of the Stalking Horse Agreement). For the avoidance of doubt, any Qualified Bid must, either on its own or when considered together with other Qualified Bid(s), provide value in excess of the Stalking Horse Agreement plus the Expense Reimbursement and minimum overbid requirements detailed below in Section (ix).

(v)    A commitment to close the transactions within the timeframe contemplated by the Stalking Horse Agreement.

(vi)    A binding and enforceable signed writing that the Bidder's offer is irrevocable unless and until the Debtor accepts a higher or otherwise better bid and such Bidder is not selected as a Back-Up Bidder; <u>provided</u> that if such Bidder is selected as the Successful Bidder, its offer shall remain irrevocable until four (4) months after the execution of the applicable Proposed Asset Purchase Agreement. Such writing shall guarantee performance of the Bidder by its parent entities, if any, or provide such other guarantee of performance requested by and acceptable to the Debtor.

(vii)    A duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse Agreement (collectively, the "<u>Proposed Asset Purchase Agreement</u>"); <u>provided, however</u>, that

such Proposed Asset Purchase Agreement shall not include any financing or diligence conditions, or any other conditions that are less favorable to the Debtor than the conditions in the Stalking Horse Agreement). The Automobile Asset list must include a formula for valuing prior year models, Demo and Loaner Units, as well as, parts (both Lexus and non-manufacturer) value. Each Proposed Asset Purchase Agreement shall be required to provide for the assumption and assignment of the DSSA.

(viii) A cash deposit equal to five percent (5%) of the cash consideration of such Bidder's bid (the "Deposit"), not to exceed $1,250,000, in the form of a wire transfer to the Debtor or a cashier's check payable to the Debtor and to be held in an escrow account at Arent Fox, LLP pending completion of the Sale unless, as set forth herein, the Bidder is determined to be  the Prevailing Bidder or a Back-Up Bidder (each as hereafter defined).

(ix) A cash purchase price that exceeds the aggregate cash consideration to be paid to or for the benefit of the Debtor's estate set forth in the Stalking Horse Agreement by at least $500,000.00, which represents the sum of: (i) the Expense Reimbursement of $250,000.00, plus (ii) an overbid of $250,000.00, and otherwise has a value to the Debtor, in the exercise of its reasonable business judgment, subject to consultation with the DIP Lender, Toyota Motor Credit Corporation (the "DIP Lender") and with the Official Committee of Unsecured Creditors (the "Committee"), that is greater or otherwise better than the value offered under the Stalking Horse Agreement (including taking into account the impact of any liabilities assumed in the Stalking Horse Agreement).

(x) Identification with particularity of which executory contracts and unexpired leases the Bidder wishes to assume and provides details of the Bidder's proposal for the treatment of related Cure Costs (as defined in the Sale Procedures Order), and contains sufficient information concerning the Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned.

(xi) An express acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding acquiring the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of

law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Proposed Asset Purchase Agreement; and (iv) is not entitled to any expense reimbursement, break-up fee, termination fee, or similar type of payment in connection with its bid.

(xii)   An irrevocable undertaking by the Bidder to execute and deliver to the Debtor such other guarantee of performance or assurance acceptable to the Debtor in its discretion.

(xiii)  A statement that the Bidder consents to the jurisdiction of the Bankruptcy Court, as applicable.

(xiv)   Written confirmation that the Bidder has not engaged in any collusion with respect to the bidding or the sale process.

D.   Only bids meeting the above requirements as determined by the Debtor will be considered and, of those, only those which the CRO believes, in the exercise of his reasonable business judgment, subject to consultation with the DIP Lender and with the Committee, would be consummated if selected as the Successful Bid, shall be considered "Qualified Bids." Each Bidder that is determined to have submitted a Qualified Bid will be considered a "Qualified Bidder."

E.   Notwithstanding anything in the Bidding Procedures to the contrary, the Stalking Horse Bidder is deemed to be a Qualified Bidder with respect to the Purchased Assets and the Stalking Horse Bid is deemed to be a Qualified Bid for all purposes in connection with the Bidding Procedures, the Auction, and the Sale, and the Stalking Horse Bidder shall not be required to take any further action in order to attend and participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing.

4.   Auction and Sale Process:

A.   Irrevocable Offer and Jurisdiction. Each Qualified Bid submitted shall constitute an irrevocable offer and be binding on the applicable Qualified Bidder from the time the bid is submitted until the entry of the Sale Order (as defined below). All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of any documents governing, effectuating, or relating to the contemplated sale transaction(s).

B.      <u>Auction Time and Location</u>. As set forth in <u>Paragraph 2.D.</u> above, in the event the Debtor receive one or more Qualified Bids for the same Purchased Assets, the Debtor shall hold an Auction.

C.      <u>Auction Procedures</u>. The Auction shall be conducted in accordance with the following procedures:

    (i)      Prior to the commencement of the Auction, the Debtor shall provide notice to each Qualified Bidder of the Qualified Bid that the Debtor believes, in the exercise of its reasonable business judgment in consultation with the DIP Lender and with the Committee, is the highest or otherwise best offer for the applicable Purchased Assets (the "<u>Starting Bid</u>").  The Debtor will value each bid based on the Proposed Asset Purchase Agreements and will determine bid order based upon the value of the bids.

    (ii)     Only the Debtor, the DIP Lender, representatives of the Creditors Committee, representatives of the Manufacturer, and each Qualified Bidder, and each of their respective advisors and representatives, may attend the Auction in person, and only Qualified Bidders physically present at the Auction will be entitled to make any Subsequent Bids (as defined below) at the Auction.

    (iii)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale of the Purchased Assets with any other Qualified Bidder, potential Bidder, the Manufacturer, or any other person or entity and shall be required to reaffirm that it has not engaged in any such collusion with each Subsequent Bid that it makes.

    (iv)     All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

    (v)      The CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules (1) are not inconsistent with this Order, the Bankruptcy Code, or any other order of this Court, and (2) are disclosed to each Qualified Bidder at the Auction.

    (vi)     Bidding at the Auction for each lot or relevant combinations of lots will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid by a Qualified Bidder (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "<u>Subsequent Bid</u>") and (b) is determined by the CRO, on behalf of the Debtor, in consultation with

the DIP Lender and with the Committee, to be (1) for the first round, a higher or otherwise better offer than the Starting Bid, and (2) for subsequent rounds, a higher or otherwise better offer than the then Leading Bid (as defined below).

(vii)    Each Subsequent Bid at the Auction shall provide net value to the estate of at least $250,000 over the Starting Bid or the Leading Bid, as applicable, which net value may be in the form of cash or non-cash consideration (with any such non-cash consideration to be valued by the CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee and articulated on the record of the Auction). The CRO, on behalf of the Debtor, may set lower incremental bids as he determines, in the exercise of his reasonable business judgment, by notifying each Qualified Bidder for such lot or combination of lots of such reduced bid increment.

(viii)    A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(ix)    After each round of bidding, the CRO, on behalf of the Debtor, shall announce the bid that he believes in the exercise of his reasonable business judgment, subject to consultation with the DIP Lender and with the Committee, to be the highest or otherwise best offer (the "Leading Bid").

(x)    All Qualified Bidders for a particular lot will be entitled to be present for all Subsequent Bids for such lot at the Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(xi)    The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments of the Auction to, among other things: (1) facilitate discussions between the Debtor and Qualified Bidders; (2) allow individual Qualified Bidders to determine how they wish to proceed; (3) consider and determine the current highest or otherwise best Subsequent Bid at any given time during the Auction; and (4) give Qualified Bidders the opportunity to provide the Debtor and the DIP Lender with such additional evidence as the Debtor request that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

D.    <u>Valuation of Bids</u>. Qualified Bids (including Subsequent Bids) will be valued by the CRO, on behalf of the Debtor, based upon factors such as:

(i) the terms, economic or otherwise, of the transaction documents submitted as part of a Qualified Bid; (ii) the total expected value of the Qualified Bid to the Debtor's estate; (iii) whether the Qualified Bid is for some or all of the Debtor's assets and the value of any assets not contemplated to be acquired as part of such Qualified Bid; (iv) the impact of any rejection damages claims arising from the proposed rejection of contracts or unexpired leases under the Qualified Bid; (v) the extent to which the identity of the Qualified Bidder or any modifications to the form of the Stalking Horse Agreement by such Qualified Bidder are likely to affect the timing of execution of definitive transaction documents or affect the timing of the closing of a transaction, and the cost or benefit to the Debtor of such modifications or timing considerations; (vi) any conditions to the Qualified Bidder's obligations to close a transaction, including the likelihood that the  Manufacturer will consent to the Qualified Bidder becoming a franchisee of the Manufacturer, and the timing thereof (including the time required to obtain any necessary approvals); the ability to obtain all necessary antitrust, governmental, foreign investment or other regulatory approvals for the proposed transaction; and any other factors the CRO may deem relevant, on behalf of the Debtor, in his reasonable business judgment and in consultation with the DIP Lender and the Committee.

E.      Successful Bid. Immediately upon the conclusion of the Auction, the CRO, on behalf of the Debtor, in consultation with the DIP Lender and the Committee, shall (i) determine, consistent with this Order, which bid or bids collectively constitute the highest or otherwise best bid for the Purchased Assets in one or more lots (such bid or bids collectively the "Successful Bid" and the Bidder or Bidders collectively submitting the Successful Bid, the "Successful Bidder") and (ii) communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The Debtor shall be deemed to have accepted a Qualified Bid only when
(i) either (1) such bid is declared the Successful Bid at the end of the Auction or (2) such bid is declared a Back-Up Bid (as defined below) and the Debtor elect to consummate the sale transaction(s) contemplated by such Back-Up Bid with the Back-Up Bidder pursuant to the terms hereof;
(ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving the sale transaction(s) contemplated thereby.  The Successful Bidder must increase its deposit to ten percent (10%) of the cash consideration of its bid no later than three days after the Sale Hearing.

F.      Back-Up Bid.

(i)     Immediately following the selection of the Successful Bid, the CRO, on behalf of the Debtor, in consultation with the DIP Lender and with the Committee, shall (i) determine which bid or bids

9

collectively constitute the second highest or otherwise best bid and, if applicable, third highest or otherwise best bid and may, in his discretion and in consultation with the DIP Lender and with the Committee, deem such second and third highest or otherwise best bid or bids each a back-up bid (such bid or bids shall each be a "<u>Back-Up Bid</u>" and each Bidder submitting a Back-Up Bid, a "<u>Back-Up Bidder</u>") and (ii) communicate to the Qualified Bidders the identity of each Back-Up Bidder and the details of each Back-Up Bid.

(ii)    Each Back-Up Bid shall remain open and shall be irrevocable and binding on the Back-Up Bidder until the earlier of (i) the first business day following the consummation of the sale of the Purchased Assets that are the subject of such Back-Up Bid to the Successful Bidder or a higher or better Back-Up Bidder, and (ii) 11:59 p.m. Eastern time on the day ninety (90) days after the date the Sale Order is entered by the Court. If the Successful Bid, or the next highest or otherwise best Back-Up Bid is terminated or fails to close within the time period specified in the Successful Bid or such Back-Up Bid, the CRO, on behalf of the Debtor, shall, in consultation with the DIP Lender and with the Committee, be authorized to consummate the sale transaction(s) contemplated by the next highest or otherwise best Back-Up Bid with such Back-Up Bidder without further order of the Court.

(iii)    The Back-Up Bidder must increase its deposit to ten percent (10%) of the cash consideration of its bid no later than three days after the Sale Hearing.

G.    <u>As Is Where Is</u>. Any sale of Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or its estates, except to the extent expressly set forth in the purchase agreement corresponding to the Successful Bid or applicable Back-Up Bid, as the case may be. Each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding the Purchased Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in their asset purchase agreement.

H.    <u>Free and Clear</u>. Except as otherwise provided in the terms of the asset purchase agreement for Successful Bid or such Back-Up Bid which may ultimately be consummated, all of the Debtor's right, title and interest in

and to the Purchased Assets subject to such sale shall be sold free and clear of all liens, claims (as such term is defined in section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, and all rights to object or consent to the effectiveness of the transfer of the Purchased Assets, all as more specifically set forth in the Sale Motion and the proposed order approving the sale transaction(s) (the "Claims"), and as set forth in the Sale Order, such Claims to attach to the proceeds of the sale with the same validity and priority as such Claims applied against the applicable Purchased Assets.

I.      Return of Deposit. The deposit submitted by each Qualified Bidder shall be returned promptly following the Sale Hearing unless such Qualified Bidder is selected as a Successful Bidder or a Back-Up Bidder. A deposit submitted by a Back-Up Bidder will be held by the Debtor until forty-eight (48) hours after the Back-Up Bid has been terminated in accordance with this Order and the Asset Purchase Agreement entered into with such Back-Up Bidder. If a Successful Bidder or a Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder or Back-Up Bidder, as applicable, the Debtor shall be entitled to retain the deposit (and such deposit shall constitute Cash Collateral of the DIP Lender) in partial satisfaction of any damages resulting from the breach or failure to perform by such Successful Bidder or Back-Up Bidder, without prejudice to any other rights the Debtor may have. The Debtor shall credit the Deposit of the Successful Bidder or the Back-Up Bidder, as applicable, toward the purchase price for their transaction on the closing of the sale to them of the Assets they are acquiring.

J.      Reservation of Rights. Except as otherwise provided in this Order, the Debtor reserves the right, in the exercise of the CRO's reasonable business judgment on behalf of the Debtor's estate, in consultation with the DIP Lender and with the Committee, to: (i) determine which Bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iv) designate the second and third highest or otherwise best bids as Back-Up Bids; (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of this Order or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (vi) waive terms and conditions set forth herein with respect to all Qualified Bids; (vii) impose additional terms and conditions with respect to all Qualified Bids; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x)

seek to modify the Bidding Procedures or withdraw the Bidding Procedures Motion at any time with or without prejudice.