Order Filed on May 21, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.:   19-30256 (VFP) |
| CTE 1 LLC, | Chapter:   11 |
| Debtor. | Hearing Date: February 20, 2024 |
| | Judge:   Vincent F. Papalia |

## MEMORANDUM OPINION

**APPEARANCES**

Philip W. Allogramento III, Esq.
Robert K. Scheinbaum, Esq.
CONNELL FOLEY LLP
56 Livingston Avenue
Roseland, New Jersey 07068
*Counsel for Darcars of Englewood, Inc.*

Philip D. Stern, Esq.
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
*Counsel for Yoon Jae Kang*

:     CTE 1 LLC d/b/a Lexus of Englewood
      Case No. 19-30256
      Motion to Enforce Bankruptcy Sale Order

**Honorable Vincent F. Papalia, Bankruptcy Judge**

### I. Introduction and Procedural History

This matter is before the Court in an unusual procedural posture. It involves a dispute

between Darcars of Englewood, Inc. ("Darcars"), the purchaser of substantially all of the assets

of CTE 1 LLC (the "Debtor"), and Yoon Jae Kang ("Mr. Kang"), who purchased a vehicle in

2017 from the Debtor's apparent predecessor-in-interest, AUA Englewood, LLC d/b/a Lexus of

Englewood ("AUA"). The Debtor (and before that, AUA) owned and operated a Lexus automobile dealership in Englewood, New Jersey.

Darcars purchased the Debtor's assets pursuant to an Order of the Bankruptcy Court entered on February 6, 2020 (the "Sale Order") that approved the sale and provided that the sale was free and clear of all liens and claims against the Debtor, including any successor liability claims. [1] The Sale Order also precluded all persons and entities from pursuing any such claims against Darcars without first obtaining an Order from the Court allowing such claims to proceed.[2] After Mr. Kang sought discovery from Darcars in a pending state court action against AUA related to potential successor liability claims, Darcars filed this Motion to Enforce Bankruptcy Sale Order (the "Motion") that seeks to preclude discovery based on the Sale Order.[3]

Darcars filed its Motion on September 28, 2023, Mr. Kang filed opposition[4] on November 30, 2023, and Darcars filed a response[5] on December 7, 2023. The Court heard oral argument on December 12, 2023. In his opposition, Mr. Kang relied on *Lefever v. K.P. Hovnanian Enterprises, Inc*., 160 N.J. 307 (1999), a New Jersey Supreme Court decision holding that product line successor liability claims may proceed against a bankruptcy sale purchaser despite a "free and clear" order from the Bankruptcy Court. At oral argument, the Court raised the issue of whether *Lefever* controlled the outcome in this case in light of the subsequent decisions of the Third Circuit Court of Appeals in *In re Trans World Airlines, Inc. (TWA)*, 322 F.3d 283 (3d Cir. 2003) and the New Jersey District Court in *In re East Orange Gen. Hosp., Inc*.,

---

[1]  Dkt. No. 247 at ¶ 7. The Sale Order further provided that the Bankruptcy Court would retain jurisdiction "to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and the Purchase Agreement." *Id*. at ¶ 26.

[2]  *Id.*

[3]  Dkt. No. 944

[4]  Dkt. No. 952

[5]  Dkt. No. 953

587 B.R. 53 (D.N.J. 2018) (barring successor liability claims by a creditor on notice of the

bankruptcy proceedings against the purchaser at a 363 "free and clear" sale). The Court

continued the Motion to allow the parties to submit additional briefing on that issue. The Court

also directed Mr. Kang to submit a certification stating what actual or constructive notice, if any,

he had of the Debtor's bankruptcy proceeding, as his opposition did not include this information

in proper or certified form. The parties submitted a Joint Scheduling Order[6] setting a briefing

schedule and continuing the hearing until February 20, 2024. After taking additional argument

on February 20, the Court reserved decision. This Opinion resolves the Motion.


## II. Jurisdiction

This Court has jurisdiction over the Motion pursuant to 11 U.S.C. § 157(b)(2)(A)

[matters concerning the administration of the estate], (N) [orders approving the sale of property],

and (O) [other proceedings affecting the liquidation of the assets of the estate or the adjustment

of the debtor-creditor relationship], and 28 U.S.C. § 1334 and the Standing Order of the United

States District Court for the District of New Jersey entered on July 10, 1984 and amended on

September 18, 2012.

Many courts, including this one, have previously held that a motion to enforce an order

approving a sale is a core proceeding. *See, e.g.*, *In re Allegheny Health Educ. & Rsch. Found*.,

383 F.3d 169, 176 (3d Cir. 2004); *Denunzio v. Ivy Holdings, Inc. (In re East Orange Gen. Hosp.,*

*Inc.)*, 587 B.R. 54, 73 (D.N.J. 2018). The successor liability limitation and related provisions of

the Sale Order are also within this Court's core jurisdiction. *See also In re Motors Liquidation*

*Co*., 428 B.R. 43 (S.D.N.Y. 2010).

---

[6] Dkt. No. 956

III. Background

A.  The Parties

Darcars, the Movant, was the purchaser of substantially all the assets of the Debtor

through a sale conducted pursuant to section 363 of the Bankruptcy Code (the "363 Sale"). Mr.

Kang, the Respondent, is the named plaintiff in a putative class action suit filed in the Superior

Court of New Jersey, Essex County (the "State Court Action"). [7]

B.  State Court Action

Mr. Kang purchased a vehicle from AUA in October 2017. Four years later, in October

2021, Mr. Kang filed a complaint against AUA and Carmine DeMaio, AUA's principal, who

was also the principal of the Debtor (the "Complaint"). The Complaint alleges that AUA

overcharged Mr. Kang $51.00 in documentary and other fees and seeks to certify as a Class all

AUA customers that were overcharged such fees. On December 20, 2021, AUA and Mr. DeMaio

filed an Amended Answer[8] to the Complaint that asserted as an affirmative defense that

"[e]ffective January 1, 2017, AUA Englewood LLC, by unanimous written consent of all

members, reorganized AUA Englewood LLC into CTE 1 LLC [the Debtor]" and that CTE 1

LLC had filed for bankruptcy on October 27, 2019, so any action against CTE 1 LLC [the

Debtor] was subject to the automatic stay pursuant to 11 U.S.C. § 362.[9]

On this basis, and after learning that substantially all the assets of the Debtor were sold to

Darcars during the bankruptcy case, Mr. Kang served Darcars with a subpoena in early 2023.

Although Mr. Kang has not yet named Darcars in the State Court Action, Mr. Kang has indicated

that the discovery he seeks relates to potential successor liability claims against Darcars in that

---

[7]  Case No. ESX-L-007792-21; Dkt. No. 958-3
[8]  Dkt. No. 958-8
[9]  *Id.* at 5

Action. Darcars objected to the subpoena on the basis of this Court's Sale Order, including its specific provisions that precluded successor liability claims against Darcars and prevented third parties from asserting such claims against Darcars without obtaining prior approval from this Court. Mr. Kang then sought to enforce the subpoena in State Court through an Order to Show Cause that was scheduled for hearing on September 29, 2023. On the day before that hearing, Darcars filed the subject Motion in this Court to enforce the Sale Order and preclude Mr. Kang from seeking discovery from Darcars. After learning of Darcars's Motion, the State Court continued the hearing on Mr. Kang's enforcement application pending resolution of Darcars's Motion in this Court.

     C.   <u>The Debtor's Bankruptcy Proceedings</u>

The Debtor filed a voluntary petition under Chapter 11 on October 27, 2019. On November 8, 2019, the Office of the United States Trustee appointed a committee of creditors holding unsecured claims to represent the interests of all similarly situated creditors in the bankruptcy case (the "Creditors Committee"). *See*, 11 U.S.C. § 1102.

On January 24, 2020, the Court conducted a sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code and determined Darcars to be the successful bidder (the previously defined "363 Sale"). The Creditors Committee actively participated in the 363 Sale process, including by filing an objection to the proposed Sale.[10] As is common in 363 sales, the Sale Order provided that the purchaser, Darcars, was not the successor to the Debtor and would not be liable to the Debtor's creditors under any theory of successor liability. The Sale Order also made various factual findings to the effect that the purchaser would not have

---

[10] Dkt. No. 140

proceeded with the sale transaction without the successor liability protections.[11] On November 24, 2020, the Court confirmed the Official Committee of Unsecured Creditors' Third Amended Combined Disclosure Statement and Plan of Liquidation (the "Chapter 11 Plan"), which relied principally on the proceeds from the 363 Sale to fund its distributions to creditors.[12]

      1.   Notice of 363 Sale

On December 10, 2019, the Debtor filed a Motion seeking approval of bidding procedures and to schedule an auction sale of certain of the Debtor's assets pursuant to section 363 ("Sale Motion").[13] Concurrently, the Debtor filed an application requesting to shorten the time for hearing the Sale Motion ("Application").[14] The Court granted the Application and entered an Order Shortening Time and Limiting Notice for the hearing on the Debtor's Motion to Schedule an Auction Sale of the Debtor's Assets, Approve Bidding Procedures and for Related Relief (the "Sale Motion Order"), which scheduled a hearing for December 16, 2019.[15] After the December 16th hearing, the Court, on December 23, 2019, entered an Order Approving Sales Procedures Notice and Bidding Procedures ("Bidding Procedures Order").[16] The Bidding Procedures Order approved bidding procedures, scheduled the hearing to approve the sale of the Debtor's assets for January 24, 2020, and established the notice requirements for the Sale Motion. The Affidavit of Service filed by Omni Agent Solutions, the Debtor's Claims and Noticing Agent, reflects that notice of the Bidding Procedures Order was provided as directed by the Court.[17]

---

[11]  Dkt. No. 247 at ¶¶ O(iv)-(v), P
[12]  Dkt. No. 570
[13]  Dkt. No. 106
[14]  Dkt. No. 107
[15]  Dkt. No. 110
[16]  Dkt. No. 156
[17]  Dkt. No. 169

As indicated in that Affidavit of Service, the Bidding Procedures Order, and the related Notice of Bid Deadlines, Auction Date, and Sale Hearing were served on numerous parties, including the Creditors Committee, parties that filed a Notice of Appearance, parties that previously expressed a bona fide interest in purchasing the Debtor's assets, and the entire Creditor Matrix. The Sale Order, entered on February 6, 2020, was served on February 8, 2020, as set forth in the BNC Certificate of Notice filed with the Court.[18]

Notwithstanding this otherwise extensive notice, it is undisputed on the current record that Mr. Kang did not receive *actual* notice of the proposed Sale or entry of the Bidding Procedures Order or the Sale Order.

2.  Publication Notices

Shortly before the sale to Darcars closed, and upon application of the Debtor pursuant to Federal Rule of Bankruptcy Procedure 9006, this Court entered an Order on February 21, 2020 that fixed a deadline to file administrative claims against the Debtor and set forth the notice required in connection with that deadline (the "Administrative Claims Order").[19] The Administrative Claims Order required service by regular mail on counsel for the Creditors Committee, all parties that filed a Notice of Appearance, all parties that filed claims against the Debtor or its entities, all known creditors, and all persons listed on the Debtor's schedules. In addition, the Administrative Claims Order required that notice of the Administrative Expense Bar Date be published in *The Record*[20] or similar publication.

---

[18]  Dkt. No. 255 at 75-76
[19]  Dkt. No. 282
[20]  *The Record* is a newspaper of general circulation and is circulated in Bergen County, where the Debtor did business, and Passaic County, where Mr. Kang lived, among other counties in New Jersey. Dkt. No. 305 at 3.

The Administrative Claims Order specifically provided that the publication notice "shall be conclusive proof that ***all unknown creditors*** of the Debtor have received good and sufficient notice of the Administrative Expense Bar Date . . . ."[21] On March 9, 2020, the claims noticing agent in the bankruptcy case, Omni Agent Solutions, filed an Affidavit of Publication[22] certifying that the Notice of Administrative Expense Claim Bar Date was published in *The Record* on March 6, 2020 (the "First Publication Notice"). The First Publication Notice also advised that the Court had approved the sale to Darcars with the Sale Order entered on February 6, 2020.

Separately, on June 11, 2020, the Creditors Committee filed a Notice of Filing of Verification of Publication in connection with its filing of an Amended Combined Disclosure Statement and Plan of Liquidation (the "Second Publication Notice"). [23] The Second Publication Notice verified that the Debtor caused the Notice of the Hearing on Confirmation of the Debtor's Plan to be published in *The Record* on June 5, 2020. The Second Publication Notice stated that: "If you hold a Claim against the Debtor as of May 28, 2020 . . . [y]ou should carefully read the [Plan] and all documents attendant thereto."[24] A review of the Plan would inform the reader of the terms of the Debtor's Plan and that the Debtor had sold substantially all of its assets to Darcars pursuant to the Sale Order.

The current record does not reflect that Mr. Kang was served with or had actual notice of any of these documents, except for any constructive notice that the Publication Notices may have

---

[21] *Id.* at ¶ 11 (emphasis added).
[22] Dkt. No. 305
[23] Dkt. No. 433
[24] Dkt. No. 433-1 at ¶ 6

provided. Mr. Kang denies any actual notice of the Debtor's bankruptcy case until the filing of

AUA's Amended Answer in December 2021.[25]

## IV. Summary of Arguments

A.  Mr. Kang

Mr. Kang does not dispute that this Court had the authority to enter the Sale Order; instead,

he argues that the Sale Order is of no effect as to him because he received no prior notice of the

363 Sale (or the bankruptcy proceedings generally) and therefore applying the terms of the Sale

Order to him would deprive him and potential class members of their Due Process rights. Mr.

Kang asserts that he and potential class members are known creditors entitled to actual notice

because their identities were allegedly easily obtainable by comparing the Debtor's business

records showing how much customers paid the Debtor for title and registration fees against the

amount the Debtor paid to the New Jersey Motor Vehicles Commission. Mr. Kang highlights

that both Publication Notices were circulated after the Court conducted the 363 Sale and entered

the Sale Order, so even if constructive notice were appropriate, those publications could not have

given constructive notice of the 363 Sale to unknown creditors in time to assert an objection.

Relying on Supreme Court precedent in *Peralta v. Heights Med. Ctr., Inc.*, Mr. Kang argues that

the lack of notice is a denial of Due Process that can only be remedied by "wiping the slate

clean" – not speculating what might have happened had Due Process been given. 485 U.S. 80, 87

(1988).

In his supplemental brief, Mr. Kang acknowledges that "this Court is bound by *TWA*, not

*Lefever.*"[26] Nonetheless, he argues that the federal cases are inapposite because the claimants

---

[25] Dkt. No. 958-2 at ¶ 11

asserting successor liability in *TWA* and *East Orange General Hospital* had notice and an opportunity to be heard before the bankruptcy court approved the 363 sale.

B. <u>Darcars</u>

Darcars asserts that Mr. Kang's identity as a creditor was not reasonably ascertainable and that, as a result, he was an unknown creditor who, at most, was entitled to constructive notice by publication.[27] Darcars argues that neither it nor the Debtor was obligated to undertake an exhaustive search of the Debtor's records in an attempt to locate prospective claimants with unknown claims.[28] In further support of this argument, Darcars notes that Mr. Kang himself "did not seek redress in the first place from [the Debtor] such that the records would have reflected a refund claim [and, t]o do so would cause an extreme burden on successful bidders and broadly speaking, the 11 U.S.C. § 363 sale process."[29] Darcars also relies on *Southern Railway Co. v. Johnson Bronze Co.* where the Third Circuit held that the notice of a 363 sale given to the Unsecured Creditors Committee pursuant to Federal Rule of Bankruptcy Procedure 2002(i) ("Bankruptcy Rule 2002(i)") was sufficient notice for Southern Railway (a ***known*** creditor who did not receive notice of the sale, but had not filed a request to receive all notices with the court). 758 F.2d 137, 140-41 (3d Cir. 1985). Applying that precedent to this situation, Darcars argues that the Creditors Committee for CTE 1, which appeared and objected to the Sale Motion, represented Mr. Kang's interest and that, as a result, specific or actual notice to Mr. Kang was not required.[30]

---

[26] Dkt. No. 958 at 9
[27] Dkt. Nos. 962 at 9-11 and 968 at 2-3
[28] Dkt. No. 968 at 6
[29] Dkt. No. 968 at 6
[30] Dkt. No. 962 at 15

V. Legal Analysis

In resolving these issues, the Court must determine (i) the type of notice, if any, Mr.

Kang was entitled to in these circumstances and (ii) whether, in any event, the notice provided to

the Creditors Committee and others was sufficient under the Third Circuit's ruling in the

*Southern Railway* case.

A.  Due Process Considerations

It is uncontroverted that constitutional "[d]ue process requires notice reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v.*

*Espinosa*, 559 U.S. 260, 272 (2010). In bankruptcy cases, what constitutes reasonably calculated

notice to satisfy due process is different for "known" and "unknown" creditors. *Chemetron Corp.*

*v. Jones*, 72 F.3d 341 (3d Cir. 1995).

The Supreme Court has explained that a "known creditor" is one whose identity is either

actually known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv.,*

*Inc. v. Pope*, 485 U.S. 478, 490 (1988). By contrast, an "unknown creditor" is one whose

"interests are either conjectural or future or, although they could be discovered upon

investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950). As noted, known creditors are

entitled to actual written notice of a debtor's bankruptcy filing. *Chemetron Corp.*, 72 F.3d at 345.

For unknown creditors, notification by publication will generally suffice. *Id. See also In re*

*Energy Future Holdings Corp*, 949 F.3d 806, 822 (3d Cir. 2020) ("claimants who were unknown

… were entitled only to publication notice of a property deprivation.")

1. <u>Mr. Kang Is An "Unknown Creditor</u>

Mr. Kang is an "unknown creditor" as defined by Supreme Court and Third Circuit precedent. There is no proof in the record that the Debtor (or much less Darcars) had actual knowledge of Mr. Kang's claim at the time the Debtor filed its bankruptcy petition (or any time thereafter). Further, Mr. Kang's identity was not reasonably ascertainable by the Debtor. Mr. Kang's alleged interest or claim against the Debtor is (and was) purely "conjectural" or "future" in nature and could not be discovered upon reasonable investigation of the Debtor's business records. Further, there is no evidence in the record that the Debtor was aware of such potential claims generally. In fact, there is no evidence in the record as to when Mr. Kang became aware of his alleged claims against AUA and Mr. DeMaio. However, the record does reflect that the State Court Action was not filed until October of 2021 – four years after the sale of the vehicle to Mr. Kang and almost two years after the sale to Darcars. Mr. Kang's Declaration in support of his Opposition fails to specify when – between the purchase of a car from AUA in October 2017 and the filing of the State Court Action in October 2021 – he became aware that he might have a claim for a $51 overcharge against AUA or anyone else. [31] All Mr. Kang says in this regard is that it was not until December 20, 2021 (when AUA's Amended Answer was filed in the State Court Action) that he became aware of the change in ownership or reorganization of AUA or the 363 Sale to Darcars.[32]

Significantly, it is undisputed that Mr. Kang took no action prior to the bankruptcy filing or the 363 Sale that would have put the Debtor on notice of his claim. As the bankruptcy court in *In re Drexel Burnham Lambert Group, Inc.* noted:

---

[31] Dkt. No. 958-2 at ¶ 3 [Declaration of Yoon Jae Kang]
[32] *Id.* at ¶ 11-12

> Among known creditors may be parties who have made a demand for
> payment against a debtor in one form or another before the compilation
> of a debtor's schedules. Typically, a known creditor may have engaged in
> some communication with a debtor concerning the existence of the creditor's
> claim.

151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993). In Mr. Kang's Affidavit, he does not state that he

had any communication with the Debtor, or its predecessor AUA, concerning the existence of his

$51 claim – at least until October of 2021 when he filed his Complaint – and that was two years

after the Debtor's case was filed. Requiring the Debtor to put such unknown creditors on notice

of the bankruptcy case would plainly constitute an undue burden. It would effectively require

notice to each of the Debtor's customers for a period covering any and all potentially applicable

statutes of limitation, such as N.J.S.A. 2A:14-1, which provides for a six-year limitation period

for injury to property including contract and fraud claims. Neither Due Process nor reason

requires such extensive notice to unknown and speculative, conjectural, or future claims.

Further, it was the Debtor's burden to notify reasonably ascertainable creditors of the

bankruptcy filing and 363 Sale,[33] it was not Darcars's burden as the purchaser, as Mr. Kang

suggests. The Debtor met its burden of providing notice to reasonably ascertainable creditors.

The Debtor's efforts included adding hundreds of creditors to amended schedules after an

extensive search of the Debtor's records to identify potential creditors.[34] And, as acknowledged

by Mr. Kang, "[w]ell over 100 former customers of the Debtor appear on the Schedules because

of *potential* claims involving the purchase of vehicles …."[35] Thus, customers with potential

---

[33] *See* FED. R. BANKR. P. 2002(a) and (i)

[34] Dkt. Nos. 124 and 155

[35] Dkt. No. 318 at 3 n. 2 (emphasis added). The Declaration by Debtor's counsel, given in
connection with its retention and conflict checks, also acknowledges that the Debtor had
"thousands of other current and former customers …." *Id.* This further demonstrates the scale,
difficulty and impracticality of the search suggested by Mr. Kang.

claims were searched for and identified in the Debtor's schedules. Mr. Kang was not one of those customers.

The methods Mr. Kang's counsel speculates that the Debtor or Darcars could have used to identify Mr. Kang, i.e., cross referencing customers' names and addresses with records from the New Jersey Motor Vehicles Commission to determine how much those customers paid in registration fees and/or based on one of Darcars' customers filing an arguably similar claim against it in a different state, go well beyond the reasonably ascertainable standard, in this Court's view. It would require the Debtor to go far beyond what is contained in its business records to determine whether any such potential claims exist, i.e., it would require the Debtor to do an extensive legal and factual investigation in order to identify claims which have not yet been asserted against it, determine who ***may*** hold those claims and then inform those parties about the potential claims, thereby effectively inviting them to assert claims even though those parties themselves have not asserted a claim or even known about one.

The Supreme Court long ago established that reasonable diligence does not require "impracticable and extended searches ... in the name of due process." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950). A debtor has no "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Chemetron Corp.*, 72 F.3d at 346 (quoting *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991)). Yet, that is precisely what Mr. Kang suggests the Debtor (or Darcars) was required to do here.

In this regard, the applicable standard only requires that a debtor examine its books and records. It is a "reasonably ascertainable" standard not a "reasonably foreseeable" standard. *Chemetron Corp.*, 72 F.3d at 347. As noted, nothing in the Bankruptcy Code or Rules requires the prospective ***purchaser***, here Darcars, to make such a search, and Mr. Kang has cited no

authority to the contrary. Further, the Debtor's examination of its records did not reveal Mr.

Kang as a potential creditor. In fact, as noted, there is no evidence that Mr. Kang made any claim

against AUA or anyone else until he filed his Complaint in October of 2021 – almost two years

after the 363 Sale to Darcars. Thus, no reasonable inquiry would have revealed Mr. Kang as a

potential creditor because Mr. Kang failed to pursue his alleged claim against anyone between

the time it allegedly arose in 2017 and the bankruptcy filing in 2019. In fact, his alleged $51

claim was not asserted against AUA until 2021, approximately four years after it arose and, as

noted, almost two years after the sale to Darcars was consummated.

In sum, this Court concludes that Mr. Kang was an unknown creditor and was entitled to

only constructive notice, at most, of the bankruptcy case and the 363 Sale.

2. Notice to the Creditors Committee Was Sufficient

There is no dispute that the Creditors Committee in this case was put on proper notice of

the 363 Sale (and all other proceedings in this case) and was an active participant in those

proceedings and in the case generally, including by filing an objection to the 363 Sale and

proposing and confirming its own Chapter 11 Plan. In these circumstances, the Court finds that

notice to the Creditors Committee was sufficient to satisfy any right Mr. Kang might have had to

notice of the 363 Sale.

In an analogous case decided by the Third Circuit – and not addressed by Mr. Kang – a

**known** creditor, Southern Railway, appealed an order approving a 363 sale, arguing that it was

entitled to actual notice of the sale (which it did not receive), and that the notice given to the

Unsecured Creditors Committee was insufficient. *Southern Railway. Co. v. Johnson Bronze Co.*,

758 F.2d 137 (3d Cir. 1985). The Third Circuit disagreed, finding that the notice preceding the

sale was legally sufficient under 11 U.S.C. § 102(1)(A) and Bankruptcy Rule 2002(i), even

though Southern Railway was a ***known*** creditor who did not receive actual notice of the sale. *Id.* at 140. The *Southern Railway* Court relied on the fact that "[FRBP] 2002(i) provides that when property is to be sold other than in the ordinary course of business [under section 363] the court 'may order that notices . . . be mailed ***only*** to the committees or their authorized agents and to the creditors and equity security holders who file with the court a request that all notices be mailed to them.'" *Id.* at 140-41 (emphasis added).

Following the *Southern Railway* precedent, this Court concludes that the notice of the 363 Sale given to the Creditors Committee and others was sufficient for Mr. Kang, an ***unknown*** creditor, because Bankruptcy Rule 2002(i) specifically so provides. In fact, this case makes for a far stronger application of Bankruptcy Rule 2002(i) and the *Southern Railway* holding because: (i) unlike the creditor in *Southern Railway*, Mr. Kang was not a known creditor at the time of the 363 Sale; and (ii) the Creditors Committee actively participated in and objected to the Sale Motion. The notice given in these circumstances complied with the requirements of Bankruptcy Rule 2002(i) and at the same time effectuated the purposes of that Rule, section 363, and the Bankruptcy Code generally by promoting the prompt and efficient administration of cases and maximizing the value of the estate for the benefit of creditors (as discussed in more detail in the next section).

Rule 2002(i) itself specifies what type of notice of a 363 sale is reasonable in the circumstances, and the Debtor satisfied those requirements, as approved by this Court. In this case, the Court entered an Order Shortening Time approving the Debtor's form and manner of notice of the 363 Sale and the related bidding procedures and the Debtor served that Order as directed by the Court.[36] The Creditors Committee received notice of the 363 Sale, as directed in

---

[36] Dkt. No. 107

the Order Shortening Time, and vigorously objected to the bidding procedures.[37] At that time,

Mr. Kang was an unknown creditor who did not file a request to receive notice before the 363

Sale, so he was not entitled to individual notice under (i). Therefore, like in *Southern Railway*,

the notice procedure for the 363 Sale was legally sufficient under the Bankruptcy Code,

Bankruptcy Rules, and applicable Supreme Court precedent.

### 3. Totality of Circumstances

Reasonably calculated notice for Due Process purposes is not examined in a vacuum. The

Supreme Court directs lower courts consider "all of the circumstances." *United Student Aid*

*Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Here, that means examining not only the

actions of the Debtor and Mr. Kang but also the policies underlying the Bankruptcy Code. One

of the primary policies is "to secure within a limited period the prompt and effectual

administration and settlement of the debtor's estate." *Chemetron Corp.*, 72 F.3d at 346 (citing

*Katchen v. Landy*, 382 U.S. 323, 328 (1966)). One way that is accomplished is through the sale

of estate assets outside the ordinary course of business under section 363.

Specifically, section 363(f) promotes maximizing property value and expeditiously

liquidating property in the bankruptcy estate by providing the purchaser the asset free and clear

of any interests in the property, including potential successor liability claims. *TWA*, 322 F.3d at

292 ("To allow the [plaintiff] to assert successor liability claims against [the purchaser] while

limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the

Bankruptcy Code's priority scheme."). *See also Douglas v. Stamco*, 363 F. App'x 100, 102 (2d

Cir. 2010). Further, upsetting the 363 Sale and allowing potential successor liability claims to be

pursued at this late date would have a chilling effect on future sales and result in lower values

---

[37] Dkt. Nos. 110, 125, and 140

being received to the detriment of all creditors. *See, e.g,*, *In re Motors Liquidation Co.*, 576 B.R. 313, 320 (Bankr. S.D.N.Y. 2017), *aff'd*, 590 B.R. 39 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) (noting that exposing a 363 buyer to damages based on the conduct of the debtor "would seriously chill a robust section 363 sale process designed to maximize creditor recoveries.").

In this case, the Debtor diligently searched for actual and potential creditors and amended its schedules to include those creditors, which did not include Mr. Kang – and he has not provided any evidence to the contrary. In fact, Mr. Kang does not appear to know he had any claims against AUA (or anyone else) at the time of the 363 Sale. Based on the Debtor's diligence and Mr. Kang's unknown status as a creditor to the Debtor, Darcars, and even himself, the Court finds that Mr. Kang was not entitled to any specific notice of the Debtor's case or the 363 Sale. Finding otherwise – especially four years after this Court entered the Sale Order – would render Bankruptcy Rule 2002(i) and this Court's related Order meaningless and would directly contradict the well-established policies cited above and the equally well-established policy of enforcing the finality of bankruptcy sales. *See, e.g.*, *In re Target Two Assocs., L.P.*, 2006 WL 3068668, at *6 (S.D.N.Y. Oct. 27, 2006), *aff'd*, 282 F. App'x 914 (2d Cir. 2008) ("Courts repeatedly emphasize the importance of enforcing the finality of bankruptcy sales."); *In re Silver Bros. Co., Inc.* 179 B.R. 986, 1006 (Bankr. D.N.H. 1995) ("Because the sale of an asset in a bankruptcy estate necessarily impacts parties other than the particular parties to the transaction, judicial sales encompass institutional and policy concerns not involved in ordinary commercial transactions [and] translate into a strong policy of finality in the judicial sale process.").

Finally, allowing Mr. Kang to continue to assert his claim in State Court and otherwise disregard the bankruptcy proceedings[38] would put him in a ***better*** position than other unsecured creditors, which is directly contrary to one of the preeminent goals of the Bankruptcy Code: equality of distribution among similarly situated creditors. *Begier v. I.R.S.*, 496 U.S. 53 (1990) (equal treatment of similar creditors is a central policy of Bankruptcy Code). To allow Mr. Kang to disrupt the sale process and the key and necessary protections provided by the 363 Sale Order at this late date would be the quintessential case of the tail wagging the dog – an unfairness and inequity that is not only inappropriate, but may also potentially be remedied in other less disruptive ways, as described below in Section D.

In sum, Mr. Kang has failed to demonstrate that he was entitled to any notice of the Debtor's bankruptcy proceedings in general or the 363 Sale in particular. To the extent he may have been entitled to constructive notice, that notice was satisfied as provided in Bankruptcy Rule 2002(i), as was determined in the *Southern Railway* case, and/or the Publication Notices given by the Debtor as described above.

C. Timeliness

Mr. Kang's delay in asserting his claim and thereby effectively challenging the 363 Sale Order further supports not disrupting the 363 Sale at this late date. Although the Publication Notices were circulated after the Court entered the Sale Order, the First Publication Notice occurred within a month of when the Court entered the Sale Order, and the Second Publication Notice within five months of when the Court entered the Sale Order. Both Publication Notices happened before the Court confirmed the Chapter 11 Plan. Given the limited time between entry

---

[38] Aside from responding to this Motion, Mr. Kang has not taken any steps in the Bankruptcy Court to protect his rights.

of the Sale Order and the Publication Notices, to the extent constructive notice to Mr. Kang may

have been required, Mr. Kang and any similarly situated claimant could have sought relief from

the Sale Order well before this time – which is nearly four years after the 363 Sale closed and

more than six years after the Debtor allegedly overcharged Mr. Kang $51. Further, as noted

above, to the extent constructive notice may have been required, constructive notice was

provided by (i), the representation of all creditors by the Creditors Committee, and the

Publication Notices.

     D. <u>Mr. Kang's Potential Remedies</u>

     Enforcing the Sale Order does not necessarily foreclose Mr. Kang's ability to recover if

he believes the Debtor has harmed him. By way of example (and not necessarily limitation), Mr.

Kang can attempt to seek relief from the Sale Order under Federal Rule of Bankruptcy Procedure

9024, seek authority to file a late proof of claim[39] (as the case has not been fully administered

and distributions to general unsecured creditors have not yet been made), or seek other

appropriate relief. The Third Circuit's holding in *Energy Future Holdings Corp.* may also apply

here. 949 F.3d 806 (3d Cir. 2020). In that case, the court found that the opportunity to file a

claim after the bar date[40] precluded an argument that unknown creditors who received

publication notice were deprived of Due Process. By allowing Mr. Kang to pursue any

appropriate remedies (subject to any applicable defenses), the slate is effectively "wiped clean"

to the extent that it may be required under the circumstances, as Mr. Kang may still seek

whatever remedy he may be entitled to in this Court as if he had objected to the 363 Sale and

otherwise been on notice of and/or participated in this bankruptcy case.

---

[39] Dkt. 953 at 4

[40] *See* FED. R. BANKR. P. 3003(c)(3)

## VI. Conclusion

The Court finds that Mr. Kang was an unknown creditor at the time of the bankruptcy filing and the 363 Sale. As an unknown creditor, Mr. Kang was not entitled to actual notice and the notice he received, to the extent he was entitled to any, was sufficient under Bankruptcy Rule 2002(i) and/or as a result of the Publication Notices. Any Due Process rights Mr. Kang may have had regarding the 363 Sale were satisfied as to the sale to Darcars and any potential successor liability claims. In these circumstances, the Court finds that Mr. Kang was not entitled to any other or additional notice at all, whether constructive or otherwise. If Mr. Kang wanted (or wants) relief from the Sale Order, he should have come to the Bankruptcy Court first, as expressly contemplated by that Order. He has not pursued that path up to now and is not foreclosed from seeking that type of relief by this ruling. Accordingly, this determination is being made without prejudice to Mr. Kang's right to seek such relief in the Bankruptcy Court as he believes appropriate in these circumstances and without prejudice to the rights of interested parties to object.

Finally, because the Sale Order's protections at issue here only applied to successor liability claims, Mr. Kang is precluded from seeking discovery from Darcars only to the extent the discovery relates directly and exclusively to potential successor liability claims against Darcars. To the extent that Mr. Kang is seeking discovery relating to other issues that may be relevant to his State Court Action against AUA and Mr. DeMaio, this Court is not precluding him from seeking such discovery. Thus, for example, if (as the result of the sale) Darcars has the Debtor's records relating to the sale of motor vehicles by the Debtor and the documentary fees it charged, Mr. Kang may request those records, subject to any and all appropriate objections by Darcars.

For the foregoing reasons, the Motion is GRANTED in part and DENIED in part. The

Court will enter an Order in accordance with this Opinion.

Dated: May 21, 2024

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**